PETTIFORD *v.* WEISENTHAL.

1. VENDOR AND PURCHASER—PURCHASE OF OUTSTANDING VENDOR IN-
TEREST—FINDING—EVIDENCE.
   Trial court's finding that defendants had purchased the vendor's
   interest in an outstanding land contract as to amusement park
   *held,* supported by record.

2. MORTGAGES—EQUITY.
   Instrument whereby defendant holders of the vendor's interest
   in a land contract agreed to sell the premises on stated terms
   to plaintiffs and provided for intermixed equities in the land
   contracts which were assigned with right of reassignment and
   involving disposition of a substantial amount of personalty,
   *held,* to constitute in equity a debt to the defendants secured
   by an equitable mortgage, foreclosable only in equity.

3. COURT COMMISSIONERS—JURISDICTION—POSSESSION OF PERSONAL
PROPERTY.
   A circuit court commissioner has no jurisdiction to adjudge rights
   of possession or title to personal property, his jurisdictional
   authority being limited by statute to the recovery of the pos-
   session of land (CL 1948, § 630.12).

4. SAME—JUDGMENT IN SUMMARY PROCEEDING—PERSONAL PROPERTY.
   A circuit court commissioner's judgment for plaintiffs in sum-
   mary proceedings for the recovery of the possession of land
   constitutes no bar to suit in equity to restrain enforcement
   thereof, where the instrument which had been presented as
   a basis for the proceeding, disclosed on its face that interests
   in a substantial amount of personalty were directly involved
   and were inseparable from the realty described.

5. INJUNCTION—SUMMARY PROCEEDINGS—PREJUDICE—FORECLOSURE.
   Decree for plaintiff purchasers of an amusement park under an.

REFERENCES FOR POINTS IN HEADNOTES
[2] 36 Am Jur, Mortgages §§ 13, 14, 91.

instrument relating to both real and personal property where-
by the vendors were enjoined from enforcing a circuit court
commissioner's judgment of restitution would not prejudice
the right of the defendants to proceed by bill in chancery to
foreclose nor prejudice defenses, if any, to such a proceeding.

Appeal from Monroe; Golden (Clayton C.), J.
Submitted June 14, 1956. (Docket No. 13, Calendar
No. 46,581.) Decided September 4, 1956.

Bill by Alonzo D. Pettiford and Joseph A. Clahas-
sey against Irving Weisenthal and Charles Phillips
to enjoin summary proceedings in connection with
forfeiture of a land contract which plaintiffs claim,
in effect, to be an equitable mortgage. Decree for
plaintiffs. Defendants appeal. Affirmed.

*Alonzo D. Pettiford, in propria persona.*

*E. J. McCormick,* for plaintiff Clahassey.

*Louis E. Barden (Norman W. Stern,* of counsel),
for defendants.

BLACK, J. April 3, 1953, defendants as first par-
ties and plaintiffs as second parties entered into
that which in form is an executory land contract.
The instrument contemplated sale to and acquisition
by plaintiffs of certain real estate known in the
record as Cross-of-Malta Park and certain personal
property described in the contract under heading
"Inventory of Personal Property at Cross-of-Malta
Park." Claiming that the mentioned instrument had
come to default on the part of plaintiffs, defendants
gave notice of intent to forfeit followed by notice of
forfeiture. November 7, 1953, they instituted sum-
mary proceedings under statute (CL 1948, § 630.12
*et seq.* [Stat Ann § 27.1986 *et seq.*] ) before a circuit
court commissioner. Unopposed judgment for

plaintiffs in such statutory proceeding (defendants here) was entered by the commissioner November 30, 1953.

This bill, filed by the present plaintiffs for relief against the commissioner's judgment, was thereupon filed. It is unnecessary to detail allegations of the bill beyond statement that it charges fraud against defendants and want of jurisdiction on the part of the circuit court commissioner. The aim of the bill is to have the mentioned instrument of April 3, 1953, together with the various accompanying legal transactions as presently described, decreed an equitable mortgage with auxiliary holding that such remedies as the present defendants may possess thereunder are equitable in nature.

The chancellor ruled in favor of the present plaintiffs. His opinion details most of the facts upon which our decision must rest, and we adopt the findings of fact set forth therein as follows:

"Plaintiffs were desirous of purchasing real and personal properties located in Frenchtown township, Monroe county, Michigan. Acting at the request of and in behalf of plaintiffs, the defendants purchased the vendor's interests in an outstanding land contract; on April 3, 1953, they entered into a land contract with plaintiffs as vendees.

"The land contract required monthly payments of $250 and credited a down payment of $10,000 on the purchase price of $50,000 (plaintiff's exhibit 1). Further payments on the principal account in the respective amounts of $8,500 were required 6 months and 1 year after the date of the land contract. Said parties' contract also contained the following:

" 'That in the closing of this deal, the purchasers shall have the right, in lieu of the payment of $8,000 in cash as part of the $10,000 down payment, to substitute securities, of a nature and type agreeable to and approved by the sellers; that upon the acceptance thereof by the sellers and conveyance of a good

and marketable title thereto by the purchasers, the purchasers shall have the right to a reassignment or re-conveyance thereof provided the purchasers pay the sum of $8,000 plus interest at 6% less any moneys received on said principal account, to the sellers on or before April 1, 1953,* that time shall be of the essence in the purchasers' option to have same reassigned or reconveyed.'

"Pursuant to said last-mentioned contract item plaintiff assigned to defendants a number of land contracts possessing a claimed vendor's interest of $23,000. Since said assignments defendants have exercised full ownership rights of the vendor's interest therein, and the court is not advised as to what, if any, credits were given plaintiffs for funds derived from said assigned contracts. Although various of these contract agreements were contained in separate instruments the court is of the opinion that they together must be viewed as constituting but 1 contract.

"In October of 1953 defendants instituted a summary proceedings before a local circuit court commissioner claiming forfeiture of land contract based upon vendee's failure to pay the specified monthly payments of $250 on September 3, 1953 and on October 3, 1953, and of failure to pay the principal sum of $8,500 due on or before October 3, 1953. This proceeding was based solely upon the executed land contract form and wholly excluded from the said proceedings any reference to the pledged land contracts agreement. Judgment for possession was rendered by the circuit court commissioner on November 30, 1953.

"The present case attacking the jurisdiction of the circuit court commissioner over the subject matter of the said transaction between the parties hereto and praying injunctive relief was thereupon entered."

---

* By supplemental undertakings it was agreed that the expiration date respecting such optional right should be July 8, 1953.

To the foregoing we add the following facts:

The "Inventory of Personal Property at Cross-of-Malta Park," forming as noted above a part of the subject matter of the entire transaction, constituted no small or insignificant part of such subject matter. It consists of just about everything one might find in the way of equipment of an amusement park including the rigging and appliances of a licensed tavern, a fire truck, a road grader, a merry-go-round, children's slides and play apparatus, barbecue equipment, "other miscellaneous items used in the operation of a park," and all of the furniture and equipment apparently necessary to the use and occupancy of 4 apartments and a cottage situated on the park property. Such personalty is not, as we shall see, legally divisible from the realty portion of the aforesaid subject matter.

At this point defendants' criticism of the first-quoted paragraph of the chancellor's finding is noted. Counsel say:

"Second, the finding that 'defendants purchased the *vendor's* interests in an *outstanding land contract*' is without basis. The trial court was obviously referring to Cross-of-Malta Park. At the time of the execution of each of the preliminary agreements there was no such outstanding land contract in existence. Upon consummation of each of the transactions, defendants become parties to 2 new land contracts. The only vendors' interest in a Cross-of-Malta Park land contract owned by defendants was in the newly-created land contract between the parties."

The chancellor, of course, had before him all of the factual circumstances shown as having led up to execution of the executory instrument of April 3, 1953. It was duly established by proof that George J. Weisenthal and Louis Glieberman initially arranged to purchase the mentioned real and personal

property from city of Monroe Post No 1138, Veterans of Foreign Wars of the United States, a nonprofit corporation. The latter then held legal title to such realty and personalty. Between the date of aforesaid preliminary agreement and execution of what is known in the record as the "first land contract",* the said George J. Weisenthal and Louis Glieberman transferred their rights under such preliminary purchase agreement to the present defendants.

The facts just related in our view fully support the chancellor's finding that "defendants purchased the vendor's interests in an outstanding land contract." We accordingly hold that the quoted objection thereto is not well-founded.

*First:* We agree with the chancellor that the instrument of April 3, 1953, with its accompanying involvements and intermixed equities in the land contracts which were assigned with right of reassignment as shown in the chancellor's findings, constitutes in equity a debt of these plaintiffs to these defendants secured by equitable mortgage. We agree further that the rights of the parties existing by such instrument and accompanying documents can only be worked out by foreclosure or forfeiture proceedings in chancery. Any other ruling would leave the question of title and possession to the mentioned personal property at Cross-of-Malta Park the subject of litigious uncertainty and would likewise render the status of the assigned "securities," as they are called in the bill and testimony, a matter of doubt. Such "securities" were, as noted in the chancellor's finding of facts, assigned by plaintiffs to defendants "in lieu  *   *   *   of the $10,000 down

---

* This "first land contract" is dated April 1, 1953. It names the Monroe Post of VFW as vendor and the present defendants as vendees.

payment" with right of reassignment on special conditions.

*Second:* It would appear elementary on review of the complicated dealings of the parties that the chancellor reached the only conclusion possible in this case. A circuit court commissioner has no jurisdiction to adjudge rights of possession or title to personal property (*Cunningham* v. *Kinyon,* 156 Mich 428). His jurisdictional authority in cases of this nature is limited to that which the legislature has conferred under the title of "Summary proceedings to recover the possession of land" (CL 1948, § 630.12 *et seq.* [Stat Ann § 27.1986 *et seq.*]). "In summary proceedings, as in other proceedings before him, the commissioner's jurisdiction is purely statutory" (*Rosenthal* v. *American Construction & Realty Co.,* 262 Mich 91, 95). When this executory instrument was offered in evidence before him, the commissioner should have dismissed the proceeding on his own motion, it being apparent on face thereof that he had no jurisdiction to determine rights of possession in or title to the single and indivisible package of realty and personalty described therein. It follows that his judgment, entered in statutory proceedings to obtain possession of land, became and is now no bar to the present bill.

That the subject property described in the instrument of April 3, 1953, has at all times been legally inseparable is settled by *Draper* v. *Nelson,* 254 Mich 380; and *Wilson* v. *Boyer,* 269 Mich 197. In the latter case plaintiff's bill to foreclose an executory contract for sale of realty and personalty was met by a cross bill asking relief under PA 1933, No 122,* known as the land contract moratorium act. The Court said (p 200):

---

* The provisions of this act, as extended, ceased to be in force March 1, 1940. See CL 1948, § 630.25 (Stat Ann 1955 Cum Supp §§ 27.1999–27.2004) and notes thereto.—REPORTER.

"The contract is indivisible. No estimate was made therein of the value of the real estate or the personal property described therein. The good will of the business was also sold. It will thus be seen that, if foreclosure be had by a bill in chancery, the sale must include all of the property described in the contract. It would be manifestly unfair to the defendant to offer for sale the real estate separately, as its value would be largely dependent upon the fact that it and the machinery and equipment constituted an established business. It seems clear that relief under the statute may not be given in the foreclosure of such a contract."

We need but add that the instrument so offered in evidence before the commissioner provides no special or separate remedy (in case of default) with respect to the identified personal property distinguished from the described realty, and that the printed form as utilized stipulates no more than the following in the way of remedy for default of the "purchaser":

"(f) If the purchaser shall fail to perform this contract or any part thereof, the seller immediately after such default shall have the right to declare the same forfeited and void, and retain whatever may have been paid hereon, and all improvements that may have been made upon the premises, together with additions and accretions thereto, and consider and treat the purchaser as his tenant holding over without permission and may take immediate possession of the premises, and the purchaser and each and every other occupant remove and put out. In all cases where a notice of forfeiture is relied upon by the seller to terminate rights hereunder, service of such notice shall be preceded by a notice of intent to forfeit the contract served at least 10 days prior thereto.

"(g) If default is made by the purchaser and such default continues for a period of 45 days or more,

and the seller desires to foreclose this contract in equity, then the seller shall have at his option the right to declare the entire unpaid balance hereunder to be due and payable forthwith, notwithstanding anything herein contained to the contrary."

We hold that the relevant rights and remedies of the respective parties in event of breach or claimed breach are determinable only in equity; that the circuit court commissioner's judgment was and is void for want of jurisdiction to adjudge rights of possession in and to the conjoined subject matter, and that the chancellor correctly viewed the dealings of the parties as constituting a loan of money by the present defendants to the present plaintiffs secured by the subject real and personal property.

The chancellor did not, of course, attempt to work out any of the equities the parties are entitled to assert, it being his apparent judgment that such should not be undertaken in the absence of a cross bill. His decree in no manner prejudices right of the present defendants to proceed by bill in chancery to foreclose. Neither does it prejudice defenses if any to such a proceeding.

Decree affirmed, with costs to plaintiffs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, BOYLES, KELLY, and CARR, JJ., concurred.